IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROMEO COOLEY,            )
      Petitioner,      )  Civil Action No. 07-285 Erie
                         )
v.                       )
                         )  **District Judge McLaughlin**
SUPERINTENDENT BROOKS, et al.,  )  **Magistrate Judge Baxter**
      Respondents.     )

# MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.   RECOMMENDATION

It is respectfully recommended that the amended petition for writ of habeas corpus [Docket No. 57] be denied and that a certificate of appealability be denied.

## II.   REPORT

Petitioner, Romeo Cooley, is a state prisoner incarcerated at the State Correctional Institution located in Albion, Pennsylvania. Pending before the Court is his amended petition for writ of habeas corpus, which he filed pursuant to 28 U.S.C. § 2254. He contends that the Pennsylvania Department of Corrections is imprisoning him on an invalid conviction and that he is entitled to immediate release.

### A.   Background

This case has a protracted and somewhat complicated history, due in large part to Petitioner's proclivity for filing repetitious motions with the state court and with this Court.[1] The following is a recitation of only that which is relevant to provide the necessary background for the resolution of Petitioner's habeas claims.

On July 20, 2004, Erie Police arrested Petitioner outside of Sophia's Tavern, located on the 500 block of Cherry Street in the City of Erie. Petitioner was seated in the front passenger's

---

[1] The Court of Common Pleas of Erie County has found Petitioner's filings to be so spurious and onerous that it has advised him in an Order dated March 5, 2008, that it "will no longer consider any motions that he files relative to this particular case. If he files any, they will not be addressed by this Court." (*3/5/08 Order*, state court record item number ("SCR No.") 62).

1

side of a Ford Explorer in which the police found crack cocaine. His case was docketed in the Court of Common Pleas of Erie County at Criminal Division No. 3721 of 2004. In or around January 2005, the District Attorney of Erie County filed the Information and charged Petitioner as follows: **Count One**: Possession of a Controlled Substance – 28.38 grams of cocaine; **Count Two**: Possession of a Controlled Substance With Intent to Deliver ("PWID") – 28.38 grams of cocaine; **Count Three**: Possession of Drug Paraphernalia (a Tic Tac container); **Count Four**: Possession of Drug Paraphernalia (baggies and/or paper); **Count Five**: Possession of Drug Paraphernalia (razor blades); **Count Six**: Possession of Paraphernalia (digital scale). (*Information*, SCR No. 3). The total of 28.38 grams of cocaine listed in the Information was arrived at by adding all of the crack cocaine found in the Ford Explorer – that is, that which was found in three plastic baggies, *the Tic Tac container*, and in another plastic baggie.

The Honorable Michael E. Dunlavey presided over Petitioner's August 2005 trial. Alan Natalie, Esquire, Assistant Public Defender, represented Petitioner. Judge Dunlavey summarized the evidence offered at the trial as follows:

> On July 20, 2004, shortly after midnight, Officers Marucci, DeLuca, Victory, and Nelson of the Erie Police Department (EPD) responded to a call at Sophia's Tavern located in Erie. The tavern owner requested that the police conduct a "walk-through" to disperse loiterers, drug-related activity, etc. around the establishment.…
>
> When the officers arrived at Sophia's Tavern, they observed [Petitioner] and a white male sitting in a tan Ford Explorer parked outside the tavern. Officer DeLuca recognized [Petitioner] as an individual with an outstanding warrant. [Petitioner] was on the passenger side of the vehicle. The white male, later identified as Robert Cote, was sitting in the driver's seat.
>
> The four officers approached the vehicle. Officer DeLuca went to the passenger side of [the] vehicle with Officer Marucci standing to his right, looking into [the] vehicle's windshield with a flashlight. Officer Nelson went to the driver's side of [the] vehicle. Officer Victory remained nearby.
>
> Officer DeLuca opened the passenger side door of the vehicle and spoke to [Petitioner] briefly. Officer DeLuca then grabbed [Petitioner] by his left wrist and placed a handcuff on that wrist. He observed [Petitioner] reach over and toss something into the center console area of the vehicle. Officer Marucci also observed [Petitioner] toss an object towards the center of the vehicle. The object was later identified as a Tic-Tac container.
>
> Officer Marucci testified that he observed a switchblade, in [a] cup holder of the center console and advised Officer DeLuca of this. Officer DeLuca then pulled [Petitioner] out of the vehicle and handcuffed him. Meanwhile, Officer

Marucci took the switchblade and the Tic-Tac container into custody. Both Officers DeLuca and Marucci observed that the Tic-Tac container had a white substance inside which appeared to them to be ten to twelve rocks of crack cocaine.

    Officer DeLuca patted down [Petitioner] and found a box of razor blades and a large wad of cash in [Petitioner's] pants pockets. The cash was later identified as $376.00 in U.S. currency, $340.00 of which was $20 bills. Officer DeLuca also found a cell phone on [Petitioner].

    - - - -

    Officers Marucci and Victory later searched the vehicle [Petitioner] had been arrested in. In the center console, they discovered a digital scale and a baggie containing a white powdery substance. Another baggie with a white powdery substance was recovered from [the] glove compartment as were several empty baggies contained inside a larger baggie. The white substance in the baggies and in the Tic-Tac container was later identified by the Greensburg state police crime lab as rocks of crack cocaine.

    Robert Cote, the driver of the vehicle, testified that he owned the tan Ford Explorer. He drove [Petitioner] around to several houses on the night of July 20, 2005 in exchange for gas money. He stated that he had similarly driven [Petitioner] around to other houses on previous nights.

    Mr. Cote further testified that [Petitioner] placed a digital scale in the center console and a "sandwich bag" in the glove compartment of the vehicle. Mr. Cote identified the switchblade found on the cup holder as his.…

    Mr. Cote testified that he and [Petitioner] were in his vehicle outside Sophia's Tavern. Mr. Cote was waiting for [Petitioner] to tell him when and where to drive next. While he was waiting, different people left the tavern, came to the vehicle, and talked with [Petitioner].

    Mr. Cote testified that when the police arrived, they appeared to recognize [Petitioner] and called him by his first name. An officer ordered Mr. Cote to place his hands on the steering wheel and he complied. As the officers pulled [Petitioner] out of the car, Mr. Cote saw [Petitioner] drop a Tic-Tac container in between the vehicle's seats.…

    - - - -

    Erie County Detective Matthew Benacci was qualified as an expert witness on drug use, drug making, drug trafficking, and the use of drugs for sale compared to the use of drugs for personal use.…

    Detective Benacci testified specifically to the use and sale of crack cocaine (hereinafter crack) in the Erie area. He stated that crack users typically buy one to five rocks of crack, usually less than a gram in weight, for personal use. Detective Benacci testified that it takes "numerous rocks" to make up a gram of crack with a street value of about $100. He testified that drug users do not store extra rocks of crack to smoke later.

    Larger quantities of crack point toward drug dealing because dealers buy crack in bulk and break it down for resale. Scales are used by dealers to weigh

3

> what they bought from larger dealers to verify that they got what they paid for. Items such as razor blades are often used to "cut" the crack into rocks. The rocks are tied up in plastic baggies or put in Tic-Tac containers for sale. In Erie, these rocks cost about $20 apiece. Large numbers of twenty dollar bills are often found on individuals who sell crack.
>
> Based on a reasonable degree of certainty, Detective Benacci testified that he believed that [Petitioner] was a drug dealer given the quantity and packaging of drugs found, and the presence of drug paraphernalia, including a scale, a cell phone, plastic baggies, a Tic-Tac container, razor blades, and a large amount of cash, mostly in $20 bills. The detective also opined that the absence of personal use paraphernalia, such as crack pipes, showed [Petitioner] was not just a user as he claimed at trial.

(Commonwealth v. Cooley, Criminal Division No. 3721 of 2004, slip op. at 2-7 (C.P. Erie, May 11, 2006), SCR No. 42).

After each party presented its case, Judge Dunlavey instructed the jury and then provided it with the verdict slip that is the basis for Petitioner's challenge to his PWID conviction and sentence. As noted previously, the Information listed the total amount of cocaine found through the police search of the Ford Explorer to be 28.38 grams. The verdict slip for Count 2 (PWID) provided the jury with the option of convicting Petitioner on that count if it found that he had possessed with the intent to deliver the total 28.38 grams of cocaine found in the Ford Explorer. (*Verdict Slip for Count 2*, SCR No. 15). The verdict slip also offered a separate breakdown of the total 28.38 grams found in the Ford Explorer between that which was found in three plastic baggies (26.6 grams), the other plastic baggie (1.2 grams), and the Tic Tac container (.58 grams), and provided the jury with the option of convicting Petitioner on Count 2 if they found that he had possessed with the intent to deliver the crack cocaine found in one or more of those containers, *i.e.*, that he possessed some, but not all, of the total 28.38 grams listed in the Information. The jury's verdict fell within the second option – it found that Petitioner was guilty of PWID only with regard to the .58 grams of crack cocaine found in the Tic Tac container. The jury also found him guilty of Count 1 (Possession of a Controlled Sentence), which merged with Count 2 for sentencing purposes; Count 3 (Possession of Drug Paraphernalia, Tic Tac container); and Count 5 (Possession of Drug Paraphernalia, razor blades). Petitioner was acquitted of Counts 4 and 6.

Judge Dunlavey sentenced Petitioner to three to six years at Count 2; six months to one

year at Count 3, to be served concurrent to Count 2; and, six months to one year at Count 5, to be served consecutive to the sentences imposed at Count 2 and 3, for a total aggregate of three and one half to seven years incarceration. Judge Dunlavey listed numerous reasons for his sentencing decisions, including that Petitioner "has shown little respect for the law or to the limits given to him by the Court"; Petitioner's parole has been revoked several times; and "he is clearly a crack dealer." (*Reasons for Sentence*, SCR No. 28B).

Judge Dunlavey denied Petitioner's post-sentencing motions, which Natalie had filed on his behalf. (See SCR Nos. 29, 33). He then appointed Deanna L. Heasley, Esquire, to represent Petitioner on his direct appeal to the Superior Court of Pennsylvania. On April 13, 2006, Heasley filed Petitioner's *Statement of Matters Complained Of On Appeal* pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) (SCR No. 39), which she supplemented a few days later (SCR No. 40). Heasley raised the following claims on Petitioner's behalf to the Superior Court: (1) the trial court erred in denying Petitioner's pre-trial motion to suppress; (2) the trial court failed to provide sufficient facts justifying his sentence for Count 2 (PWID); (3) the trial court exhibited bias against Petitioner at sentencing; (4) the trial court failed to consider mitigating factors at sentencing; and, (5) the amount of crack that the jury convicted Petitioner of possessing (.58 grams) was more consistent with personal use and not sale or delivery, and as a result the jury's verdict was inconsistent with the elements of a PWID conviction. Petitioner has not raised any of these claims in his amended petition for writ of habeas corpus; therefore, the state court's resolution of them is not relevant to the instant case.

One claim that Heasley refused to raise, however, is of relevance to the instant proceeding. Petitioner requested that she include in the 1925(b) Statement a claim that the trial court erred when it presented to the jury in the verdict slip for Count 2 (PWID) the option of finding that Petitioner had possessed some, but not all, of the 28.38 grams of crack cocaine that had been listed in the Information. Petitioner believes that Rule 564 of the Pennsylvania Rules of

5

Criminal Procedure, Amendment to Information,[2] required the Commonwealth to amend the Information to expressly state that he was being charged with possessing the .58 grams of crack cocaine in the Tic Tac container (even though that .58 grams of crack cocaine is part of the 28.38 grams listed in the Information). Criminal Rule 564 provides in relevant part that a criminal information may be amended "when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense." The Superior Court of Pennsylvania has held that the purpose of Criminal Rule 564 "is to ensure that a defendant is *fully apprised of the charges*, and to *avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed*." Commonwealth v. Davalos, 779 A.2d 1190, 1994 (Pa.Super. 2001) (emphasis added).

Because the Commonwealth had not amended the Information, Petitioner wanted Heasley to contend that the verdict slip for Count 2 prejudiced him and therefore his conviction on that count must be overturned. In a letter dated April 26, 2006, Heasley explained to Petitioner that she would not raise any claim regarding Criminal Rule 564 or the alleged invalidity of the verdict slip for Count 2 because in her professional judgment such arguments were meritless:

> You were originally charged, via criminal information, with PWID of 28.38 grams. The total of 28.38 was arrived at by adding all of the crack found in the plastic baggies, tic tac container, and glove compartment. The jury verdict slip was broken down to show each item['s] weight, and total weight, to reflect the way the PSP lab analyzed the weight of the drugs. The jury found you guilty of possessing only the .58 grams contained in the tic tac container, apparently because they believed that the other drugs belonged to Mr. Tome [sic], the owner of the car.
> 	The Commonwealth was not required to amend the information to break down the different totals in the bags, glove compartment, etc., because you were not prejudiced by the breaking down of the total. In fact, it appears you were helped by this breakdown, because the jury found you guilty of possessing the least amount possible.
> 	- - - -
> 	As I have advised you in previous correspondence, if you disagree with the manner in which I am handling your appeal, send me a letter stating that you want to represent yourself. I will then file the necessary motion with [the] Superior Court.

---

[2] Rule 564 was formerly Rule 229. It was renumbered Rule 564 and amended March 1, 2000, effective April 1, 2001.

6

(4/26/06 letter from Heasley to Petitioner, attached as Ex. B to Petitioner's *pro se* application for relief to the Superior Court, SCR No. 41 (emphasis in original)). Petitioner subsequently filed numerous *pro se* filings with the Superior Court, but Heasley remained as his counsel through the appeal.

On February 5, 2007, the Superior Court issued a Memorandum affirming Petitioner's judgment of sentence. (Commonwealth v. Cooley, No. 2154 WDA 2005, slip op. (Pa.Super. Feb. 5, 2007, SCR No. 40). The Pennsylvania Supreme Court denied Petitioner's petition for allowance of appeal on September 7, 2007.

On or around September 18, 2007, Petitioner filed a *pro se* motion for collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. (SCR No. 44; see also *Nunc Pro Tunc P.C.R.A. Amended Brief*, attached to SCR No. 44). He asserted that his conviction on Count 2 (PWID) was a nullity since the Commonwealth had not amended the Information to expressly state that he was being charged with possession with the intent to deliver the .58 grams of crack cocaine in the Tic Tac container. Petitioner claimed that Natalie was ineffective for not raising the issue before the trial court and that Heasley was ineffective for not raising this claim on direct appeal.

Judge Dunlavey recused himself from the case because Petitioner had filed a civil rights lawsuit against him. The Honorable Ernest J. DiSantis, Jr., presided over the PCRA proceeding. In November 2007, Judge DiSantis appointed William Hathaway, Esquire, to represent Petitioner. On January 8, 2008, Hathaway submitted a "no-merit" letter and a petition for leave to withdraw as counsel (attached to SCR No. 51).

On January 11, 2008, Judge DiSantis issued an Opinion in which he held that Petitioner's claims had no merit:

> Based upon this Court's independent review of the record, it is clear that petitioner was on notice of the charges against him.... Furthermore, the manner in which the quantity of drugs was handled at the trial by Judge Dunlavey in no way surprised the petitioner and prejudiced his ability to prepare a defense. There was no substantial deviation between the amount of drugs charged in the criminal information and the amount established at trial. Moreover, the quantity of drugs is not an element the offense(s). It is a sentencing issue and no error occurred in that context. Commonwealth v. Hartey, 924 A.2d 1273, 1277 (Pa.Super. 2007). That being the case, neither trial counsel nor appellate counsel was ineffective.

7

(Commonwealth v. Cooley, Criminal Division No. 3721 of 2004, slip op. at 5-6 (C.P. Erie, Jan. 11, 2008), SCR No. 51). Judge DiSantis issued a final order on February 1, 2008 denying the PCRA motion. (SCR No. 57).

Petitioner filed a *pro se* appeal with the Superior Court on or around March 7, 2008. (*Statement Of Matters Complained Of On Appeal*, SCR No. 65; *Appellant's Brief*, SCR No. 67). In the meantime, in October 2007 Petitioner filed a *pro se* petition for writ of habeas corpus with this Court. Because Petitioner was still exhausting his state court remedies, this Court dismissed his habeas petition without prejudice. (Docket No. 44).

On August 8, 2008, the Superior Court issued a Memorandum affirming the denial of Petitioner's PCRA motion. (Commonwealth v. Cooley, No. 440 WDA 2008, slip op., (Pa.Super. Aug. 8, 2008), SCR No. 71). It summarized Petitioner's five appellate claims as follows: **Claim 1** – petitioner "was placed in double jeopardy because he was prosecuted twice for the third count in the Commonwealth's information, possession of drug paraphernalia"; **Claim 2** – the trial court "misapplie[d] and ignored the law" with respect to the manner in which it calculated the weight of the cocaine with which he was found"; **Claim 3** – "the trial court erred in allowing the Commonwealth to 'alter' its information to include count three, possession of drug paraphernalia"; **Claim 4** – "counsel cause[d] [petitioner] to be punish[ed] by the Superior Court for th[eir] error on the not guilty offenses," and that his "punishment" violated his constitutional rights"; and, **Claim 5** – "PCRA counsel was ineffective for failing to argue the evidence was insufficient to sustain his conviction for possession with intent to deliver." (Id. at 4-6 (quoting *Appellant's Brief* at III)).

The Superior Court determined that Claim 1, Claim 2, and Claim 3 were waived because they were not raised on direct appeal. (Id. at 4-5 (citing Commonwealth v. Fowler, 930 A.2d 586, 594 (Pa.Super. 2007) and 42 Pa.C.S.A. § 9544(b) ("Issues waived.--For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."). It rejected Claim 4 because Petitioner had not raised it to the PCRA court and did not develop any argument to support it. (Id. at 5 (citing Commonwealth v. Plante, 914 A.2d 916, 924 (Pa.Super.

8

2006) ("[F]ailure to develop an argument with citation to, and analysis of, relevant authority waives the issue on review."). The Superior Court rejected Claim 5 as previously litigated because Petitioner had argued unsuccessfully on direct appeal that there was insufficient evidence to support the PWID conviction, and because Hathaway could not be found ineffective for not raising a claim that it had previously denied on direct review. (Id. at 6 (citing 42 Pa.C.S.A. § 9544(a)(2) ("Previous litigation.--For purposes of this subchapter, an issue has been previously litigated if:...(2) the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue[.]"), and quoting Commonwealth v. Daniels, 947 A.2d 795, 798 (Pa.Super. 2008) ("[C]ounsel cannot be deemed ineffective for failing to pursue a meritless claim.")). It did not specifically address the ineffective assistance claims that Judge DiSantis adjudicated in his January 11, 2008, Opinion because it did not construe Petitioner's appellate filings to be raising those same claims. (See Id. 4-6).

Petitioner filed with the Superior Court a motion for reconsideration. At the same time, he continued to seek relief in the Court of Common Pleas by filing a second PCRA motion in which he once again raised claims related to the Commonwealth's alleged violation of Criminal Rule 564 and the alleged improper verdict slip for Count 2 (PWID). (SCR No. 68). On August 29, 2008, Judge DiSantis denied the motion because Petitioner is not entitled to file a second PCRA motion. (SCR No. 69).

On October 14, 2008, the Superior Court denied Petitioner's motion for reconsideration. On October 29, 2008, this Court granted Petitioner's motion to reopen the instant habeas proceeding because Petitioner's PCRA proceedings had concluded. (Docket No. 56). This Court also granted Petitioner's motion to amend his habeas petition and instructed him that he must raise all claims for relief in the amended petition and must use the Western District of Pennsylvania's standard form for filing 28 U.S.C. § 2254 petitions when he submitted his amended petition. (Id.)

On November 11, 2008, Petitioner filed his amended habeas petition. [Docket No. 57]. He claims that the trial court violated his due process, double jeopardy, and other constitutional rights because it provided the jury with the option of finding that he was guilty of PWID for

9

possessing some, but not all, of the total amount of the 28.38 grams of cocaine listed in the Information. Petitioner asserts that as a result of the trial court's error, his conviction and sentence on Count 2 (PWID) is a legal nullity and must be vacated. Petitioner also claims that since the term of imprisonment imposed at Count 2 must be vacated, he is now serving beyond the maximum sentence imposed on what are (according to him) his only valid convictions (on Counts 3 and 5), and therefore he is entitled to immediate release from imprisonment. Finally, he appears to be contending that he received ineffective assistance because Natalie and Heasley did not raise the challenge to Count 2's verdict slip at trial and then on direct appeal. On January 15, 2009, the Commonwealth filed its Answer (Docket No. 65), and the case is now ripe for review.

### B. Discussion

#### 1. Petitioner's Claims Are Procedurally Defaulted

This proceeding is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the federal habeas statute, a state prisoner is entitled to habeas corpus relief only if he demonstrates that his state custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. §2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Importantly, a state prisoner must provide the state courts with the first opportunity to consider any claim that he has raised in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A). This "exhaustion" requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights.'" Cristin v. Brennan, 281 F.3d 404, 410 (3d Cir. 2002) (quoting Coleman v. Thompson, 501 U.S. 722, 731 (1991)); see also O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). In order to properly exhaust a claim, a petitioner must have fairly presented it to each level of the state courts. Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000) (citing 28 U.S.C. § 2254(b); O'Sullivan, 526 U.S. at 848; Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996)). He also must demonstrate that he raised the claim *in the proper state forums through the proper vehicle*, not just that he raised a federal constitutional claim before a state court at some point. O'Sullivan, 526 U.S. at 845 (a petitioner must have presented a claim through the

10

"established" means of presenting a claim in state court at the time); Ellison v. Rogers, 484 F.3d 658, 660-62 (3d Cir. 2007) (the petitioner's claims of ineffective assistance were not exhausted properly even though he had raised those claims on direct review, because state law required that ineffective assistance claims be raised in state post-conviction review, and the petitioner had not sought such review).

If a petitioner has failed to properly exhaust his claim – for example, he failed to comply with a state procedural rule such as a waiver rule or statute of limitations – and as a result the state court declined to adjudicate the claim on the merits, the claim is defaulted in federal habeas corpus under the procedural default doctrine. See, e.g., Coleman, 501 U.S. at 730; O'Sullivan, 526 U.S. at 851-56 (Stevens, J. dissenting) (describing the history of the procedural default doctrine). The procedural default doctrine prohibits federal habeas courts from reviewing a state court decision involving a federal question if the state court decision is based on a rule of state law that is independent of the federal question and adequate to support the judgment.[3] See, e.g., Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman, 501 U.S. at 732.

All of the claims that Petitioner has raised in his amended petition are procedurally defaulted.[4] During the PCRA proceeding, Petitioner raised a double jeopardy claim and perhaps

---

[3] A state rule is "adequate" if: (1) the rule speaks in unmistakable terms; (2) the state appellate court reviewing the petitioner's claim refused to review it on the merits because the petitioner failed to comply with the rule; and (3) the state court's refusal was consistent with other decisions. Nara v. Frank, 488 F.3d 187, 199 (3d Cir. 2007); Kindler v. Horn, 542 F.3d 70, 78 (3d Cir. 2008) (a state procedural rule "that is consistently applied in the vast majority of cases is adequate to bar federal habeas review even if state courts are willing to occasionally overlook it and review the merits of a claim for relief where the rule would otherwise apply."). The waiver rule applied by the Superior Court in this case satisfies each of these requirements.

[4] A federal court may only reach the merits of a procedurally defaulted claim if the petitioner makes a showing of "cause and prejudice" or establishes a "fundamental miscarriage of justice" in order to overcome the procedural default. See, e.g., Murray v. Carrier, 477 U.S. 478, 485, 495 (1986); Whitney v. Horn, 280 F.3d 240, 252-53 (3d Cir. 2002); Kindler, 542 F.3d at 78. Petitioner has not shown that either circumstances is present in this case. He argues that he has shown a "fundamental miscarriage of justice," (see Motion In Support of Writ Of Habeas Corpus (Docket No. 62)), but he has not. The "fundamental miscarriage of justice" rule applies only in the "extraordinary" case in which the petitioner has presented new evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316, 324 (1995); see also House v. Bell, 547 U.S. 518 (2006); Goldblum v. Klem, 510 F.3d 204, 225 (3d Cir. 2007); Albrecht v. Horn, 485 F.3d 103, 121-27 (3d Cir. 2007); Hubbard v. Pinchak, 378 F.3d 333, 339-41 (3d Cir. 2004). This is not one of those extraordinarily and rare

(continued...)

a due process claim, but the Superior Court held that those claims were waived because they could have been raised on direct appeal. (Cooley, No. 440 WDA 2008, slip op. at 4-5 (citing Fowler, 930 A.2d at 594 and 42 Pa.C.S.A. § 9544(b)). As for his claims that Natalie and Heasley provided him with ineffective assistance for failing to challenge the verdict slip for Count 2 (PWID), he raised those claims in his PCRA motion, but he did not properly exhaust them either because he abandoned them in his appeal to the Superior Court. Lines, 208 F.3d at 159 (petitioner must provide state appellate court with the opportunity to review claim); O'Sullivan, 526 U.S. at 848 (same). Thus, he did not fully exhaust those claims and because he did not give the Superior Court the opportunity to review them on the merits his ineffective assistance claims are also procedurally defaulted.

### 2. Even If Petitioner Did Fully Exhaust His Ineffective Assistance Claims And Those Claims Could Be Reviewed On The Merits, His Request For Habeas Relief Would Still Fail

Even if this Court assumed for the sake of argument that Petitioner did raise in his appeal to the Superior Court the same ineffective assistance claims that he had raised before the PCRA court, but that the Superior Court – which acknowledged that it had a difficult time discerning his claims – simply misunderstood the basis of his ineffectiveness claims, Petitioner would still not be entitled to relief. If this Court makes that assumption, then it must look to Judge DiSantis's January 11, 2008, Opinion and review his adjudication of the ineffective assistance claims under AEDPA's deferential standard of review. See, e.g., Bond v. Beard, 539 F.3d 256, 289-90 (3d Cir. 2008) (habeas court may review the PCRA court's decision if it represents the state courts' last reasoned opinion on the claim or was not supplemented in a meaningful way be the higher state court); see also Fahy v. Horn, 516 F.3d 169, 197, 203 n.36 (3d Cir. 2008) (AEDPA's deferential standard of review applied to the Common Pleas Court's decision on the merits, even though when considering that same claim in the subsequent appeal, the Pennsylvania Supreme Court rejected it on procedural grounds). AEDPA "modified a federal habeas court's role in reviewing

---

[4](...continued)
cases in which the fundamental miscarriage of justice rule is implicated.

state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). It provides, in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

28 U.S.C. § 2254(d)(1).

The "clearly established Federal law" in which to analyze Petitioner's ineffective assistance claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, Petitioner must show that Natalie's and Heasley's "representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Thomas v. Varner, 428 F.3d 491, 499 (3d Cir. 2005) (quoting Strickland, 466 U.S. at 689). "However, [b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (quoting Strickland, 466 U.S. at 689). "[I]t is only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997). Petitioner also must show under Strickland that he was prejudiced by his counsel's deficient performance. "This requires showing that counsel's errors were so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In other words, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

13

been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.

Judge DiSantis applied the correct legal standard to Petitioner's ineffective assistance claims.  (Cooley, Criminal Division No. 3721 of 2004, slip op. at 4-5, SCR No. 51); see also Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999) (the legal standard for evaluating ineffective assistance claims in a PCRA proceeding is the same as the federal Strickland standard).  Therefore, Judge DiSantis's adjudication of these claims was not "contrary to" Strickland.  See Werts v. Vaughn, 228 F.3d 178, 202-04 (3d Cir. 2000) ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted Strickland and thus was not 'contrary to' established Supreme Court precedent.").

The dispositive question, then, is whether Judge DiSantis's adjudication of Petitioner's ineffective assistance claims was an "unreasonable application" of Strickland.  It was not.  In order to overcome AEDPA's standard of review, Petitioner must show that the state court's adjudication of his claims "cannot reasonably be justified under existing Supreme Court precedent[,]" Hackett v. Price, 381 F.3d 281, 287 (3d Cir. 2004), and he cannot meet that burden.  His claims are premised upon his erroneous belief that Criminal Rule 564 required the Commonwealth to amend the Information in order for the verdict slip for Count 2 to provide the jury with the option of finding him guilty of possessing only part of the 28.38 grams of cocaine listed in the Information.  Criminal Rule 564 imposed no such requirement, as Judge DiSantis held when he found that no amendment to the Information was required because "it is clear that [P]etitioner was on notice of the charges against him[,]" and "the manner in which the quantity of drugs was handled at the trial by Judge Dunlavey in no way surprised the [P]etitioner and prejudiced his ability to prepare a defense."  (Cooley, Criminal Division No. 3721 of 2004, slip op. at 5, SCR No. 51).  This Court is, of course, bound by that state law determination and has no authority to review it.  See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

In conclusion, Petitioner was always on notice that he was being charged with possessing with intent to deliver the crack cocaine found in the Tic Tac container.  He has not shown that

14

Criminal Rule 564 required amendment of the Information, that the verdict slip for Count 2 (PWID) was improper, that he was deprived of any defense, or that there is any basis to vacate the sentence imposed on Count 2. Thus, he has not shown that his attorneys' decisions not to raise such challenges amounted to constitutionally deficient representation or that he was prejudiced, and Judge DiSantis's rejection of Petitioner's ineffective assistance of counsel claims withstands review under AEDPA.

### C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." In Slack v. McDaniel, 529 U.S. 473, 474 (2000), the Supreme Court stated that "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Applying these standards to this case, jurists of reason would not find the conclusions reached herein to be debatable. Accordingly, a certificate of appealability should be denied.

### III.     CONCLUSION

For the foregoing reasons, it is respectfully recommended that amended petition for writ of habeas corpus [Docket No. 57] be denied and that a certificate of appealability be denied.

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4(B), the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.  See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

Dated: March 26, 2009                              /s/ Susan Paradise Baxter
                                                                    SUSAN PARADISE BAXTER
                                                                    Chief U.S. Magistrate Judge